UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 13 CR 685-1 |
| DIKE AJIRI | Judge John J. Tharp, Jr. |

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant DIKE AJIRI, and his attorney, DARRYL A. GOLDBERG, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A) and Rule 11(c)(1)(B),  as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The indictment in this case charges defendant with health care fraud, in violation of Title 18, United States Code, Section 1347 (Counts 1 - 11).

3.     Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count One, which charges defendant

with health care fraud, in violation of Title 18, United States Code, Section 1347. In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.    Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

Beginning no later than 2007 and continuing through August 2013, in the Northern District of Illinois, Eastern Division, and elsewhere, DIKE AJIRI did participate in a scheme to defraud a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), namely Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money under the custody and control of that program in connection with the delivery of and payment for health care benefits and services.

AJIRI was the chief executive officer of Mobile Doctors, a company that arranged with physicians to provide home visits to patients in Illinois, Michigan, Indiana, and other states, among other things. Mobile Doctors used the entity "Lake MI Mobile Doctors" as its billing arm.

2

Physician visits to a patient's home were billed to Medicare using codes established by the American Medical Association, referred to as "CPT codes." Physician visits with established patients were billed using CPT codes 99347 through 99350, with the higher codes representing visits of a more complicated nature.

Medicare was a Federal health care benefit program, as defined in Title 18, United States Code, Section 24(b), that provided free and below-cost health care benefits, including, among other things, medically necessary physician visits to patients' homes and in-home health care services for persons who were confined to their homes. Medicare payments for claims submitted using CPT codes 99350 were more than the payments for claims submitted using CPT codes 99349.

AJIRI knew that for a home visit with an established patient to be billed properly using CPT code 99350, it was required to have at least two of the following key components as defined by the American Medical Association: a comprehensive interval history, a comprehensive examination, and/or medical decision making of moderate to high complexity. According to the American Medical Association, such a visit usually involved a problem or problems of moderate to high severity, and a physician typically spent 60 minutes face-to-face with the patient and/or family during such a visit.

AJIRI devised a scheme to have non-physicians, including himself, determine how Mobile Doctors physicians' visits were to be billed to Medicare based on factors in addition to physicians' medical decision making, the actual medical services

3

provided to patients, and the patients' medical conditions. Using these factors, AJIRI personally altered files for patient visits so that many visits would be billed improperly using CPT code 99350, and instructed others at Mobile Doctors to make such alterations. AJIRI knew that it was unlawful to submit false claims for payment to Medicare.

AJIRI personally altered Mobile Doctors billing forms, and instructed Mobile Doctors personnel to do the same, so that established-patient visits with many patients who lived in Indiana and with many patients who received health care benefits and services from the Railroad Retirement Board were fraudulently billed to Medicare and the Railroad Retirement Board at the highest level, namely, CPT code 99350. AJIRI caused Mobile Doctors to bill Medicare and the Railroad Retirement Board at the highest level for these patients, based on his own criteria, rather than solely based on physicians' medical decision making during the visits, the actual medical services provided to patients, and the patients' medical conditions.

For example, on or about July 1, 2009, in the Northern District of Illinois, Eastern Division, and elsewhere, AJIRI knowingly and willfully executed the scheme by submitting and causing to be submitted to Medicare a claim seeking payment using CPT code 99350 for a patient visit that was rendered by a Mobile Doctors physician regarding Patient MW on or about March 20, 2009. AJIRI acknowledges that the visit did not qualify for billing under CPT code 99350.

AJIRI acknowledges that the improper billing of patient visits using CPT code 99350 and pursuant to the scheme described herein defrauded Medicare and the Railroad Retirement Board of approximately $1,854,000.

AJIRI further acknowledges that proceeds of the scheme described herein are contained in the TD Ameritrade account bearing the number XXX-XXX593, the bank account bearing the number 001110019091396 in the name of Dike H. Ajiri or Rilee Ajiri at JP Morgan Chase Bank, San Antonio, TX, the bank account bearing the number 10299296 in the name of Mobile Doctors USA, LLC at American Chartered Bank, Chicago, IL, and the bank account bearing the number 1215740 in the name of Lake MI Mobile Doctors PC at American Chartered Bank, Chicago, IL.

### **Maximum Statutory Penalties**

7.    Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.    A maximum sentence of 10 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.    Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

5

c.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

8.     Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points, except as specified below:

a.     **Applicable Guidelines**.  The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2014 Guidelines Manual.

b.     **Offense Level Calculations**.

i.     The base offense level is 6, pursuant to Guideline § 2B1.1(a)(2).

ii.     Pursuant to Guideline § 2B1.1(b)(1)(I), the offense level is increased by 16 levels because the loss for which defendant is accountable is more than $1,000,000.   In particular, the government's position is that the loss to Medicare resulting from the scheme described herein and for which defendant is accountable was approximately $1.78 million and that the loss to the Railroad

6

Retirement Board resulting from the scheme described herein and for which defendant is accountable was approximately $74,000.

        iii.     Pursuant to Guideline § 2B1.1(b)(7), the offense level is increased by two levels because defendant is convicted of a federal health care offense involving a government health care program, namely, Medicare, and the loss was more than $1,000,000.

        iv.     Pursuant to Guideline § 3B1.3, the government's position is that the offense level is increased by two levels because defendant abused a position of public or private trust in a manner that significantly facilitated the commission and concealment of the offense. Defendant's position is that Guideline § 3B1.3 does not apply. Each party is free to present evidence or argument on this issue.

        v.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

        vi.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting

the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

      c.    **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

      d.    **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the government's position is that the anticipated offense level is 23, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 46 to 57 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. Defendant's position is that the anticipated offense level is 21, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 37 to 46 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

      e.    Both parties expressly acknowledge that while none of the guidelines calculations set forth above are binding on the Court or the Probation Office, the parties have agreed pursuant to Fed. R. Crim. P. 11(c)(1)(B) that certain

components of those calculations—specifically, the loss amount set forth above in subparagraph (b)(ii) of this paragraph—are binding on the parties, and it shall be a breach of this Agreement for either party to present or advocate a position inconsistent with the agreed loss amount set forth in the identified subparagraph.

10.    Defendant understands that with the exception of the guidelines provision identified above as binding on the parties, the guidelines calculations set forth above are non-binding predictions, upon which neither party is entitled to rely, and are not governed by Fed. R. Crim. P. 11(c)(1)(B). Errors in applying or interpreting any of the sentencing guidelines (other than those identified above as binding) may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11.    Each party is free to recommend whatever sentence it deems appropriate.

12.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the

Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.     Regarding restitution, the parties acknowledge that the total amount of restitution owed to Medicare is approximately $1,780,000, minus any credit for funds repaid prior to sentencing, and that the total amount of restitution owed to the Railroad Retirement Board is approximately $74,000, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make full restitution in the amount outstanding at the time of sentencing.

14.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

15.     Defendant agrees to assist and not oppose efforts by the government to transfer the full amount of the funds held in the TD Ameritrade account bearing account number XXX-XXX593 to the Clerk of the U.S. District Court so that such funds can be applied towards restitution.

16.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

17.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

18.     After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant.

### Forfeiture

19.     Defendant understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property constituting or derived from proceeds obtained, directly or indirectly, as a result of the offense.

20.     Defendant agrees to the entry of a personal money judgment in the amount of $300,000. Defendant consents to the immediate entry of a preliminary order of forfeiture setting forth the amount of the personal money judgment he will be ordered to pay.

21.     Defendant admits that because the directly forfeitable property is no longer available for forfeiture as described in Title 21, United States Code, Section 853(p)(1), the United States is entitled to seek forfeiture of any other property of defendant, up to the value of the personal money judgment, as substitute assets pursuant to Title 21, United States Code, Section 853(p)(2).

11

22.    Defendant acknowledges that on or about October 28, 2013 administrative forfeiture proceedings were commenced against certain property, including (1) approximately $41,862.04 from Bank Account 001110019091396 in the name of Dike H. Ajiri or Rilee Ajiri at JP Morgan Chase Bank, San Antonio, TX, (2) approximately $86,531.25 from Bank Account 10299296 in the name of Mobile Doctors USA, LLC at American Chartered Bank, Chicago, IL, and (3) approximately $62,072.57 from Bank Account 1215740 in the name of Lake MI Mobile Doctors PC at American Chartered Bank, Chicago, IL.    By signing this plea agreement, defendant acknowledges that he had notice of the administrative forfeiture proceeding, relinquishes any right, title, and interest he may have had in this property, withdraws any previously filed claims, and understands that an administrative decree of forfeiture has been entered, or will be entered, thereby extinguishing any claim he may have had in the seized property.

23.    Defendant understands that forfeiture shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment. In this case, however, the United States Attorney's Office will recommend to the Attorney General that any net proceeds derived from any forfeited assets be remitted or restored to eligible victims of the offense pursuant to Title 18, United States Code, Section 981(e), Title 28, Code of Federal Regulations, Part 9, and other applicable law.

12

24.     Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture and/or abandonment carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.  Defendant further agrees not to challenge or seek review of the civil or administrative forfeiture of any property identified in this agreement subject to forfeiture or abandonment.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

25.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 13 CR 685-1.

26.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

13

## Waiver of Rights

27.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

14

iv.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.  At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.  At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b.  **Appellate rights.**  Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

15

28.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

29.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

30.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

16

31.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

32.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

33.    Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

34.   Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

35.   Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

36.   Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

18

37.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

38.    Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE: _____10/23/15_____


_____          _____
ZACHARY T. FARDON                  DIKE AJIRI
United States Attorney             Defendant

_____          _____
STEPHEN CHAHN LEE                  DARRYL A. GOLDBERG
Assistant U.S. Attorney            Attorney for Defendant


19